IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PHILE ANDRA WATSON, § | |
| § | |
| PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:20-CV- 181-G-BK |
| § | |
| MEGAN J. BRENNAN, POSTMASTER § | |
| GENERAL UNITED STATES POSTAL § | |
| SERVICE, § | |
| § | |
| DEFENDANT. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case has been referred to the United States magistrate judge for pretrial management. Currently before the Court are the parties' cross-motions for summary judgment. Doc. 52; Doc. 55. For the reasons that follow, Defendant's motion should be **GRANTED**, Plaintiff's motion should be **DENIED**, and this case should be **DISMISSED**.

**I.   BACKGROUND**

Plaintiff, proceeding *pro se*, alleges in the operative complaint that Defendant, his former employer, discriminated and retaliated against him based on his sex and age in violation of Title VII and the Age Discrimination in Employment Act ("ADEA").[1]  Doc. 34 at 2-4.  Plaintiff also

---

[1] While Plaintiff initially claimed discrimination based on his race as well, he abandoned that claim in his response to Defendant's summary judgment motion. *See* Doc. 65 at 17-19 ("Race Discrimination was amended and no longer a part of this Lawsuit.").

asserts a cause of action for intentional infliction of emotional distress. Doc. 34 at 3. In due course, the parties cross-moved for summary judgment.² Doc. 52; Doc. 55.

## II.   APPLICABLE LAW

### A.  *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (citation omitted).

Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). The Court "must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment, but a party

---

² Because Plaintiff's *Motion for Summary Judgment* is largely redundant of his response to Defendant's summary judgment motion, the Court does not separately reference it.

opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016) (internal alterations omitted) (quoting *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995)). Further, unsubstantiated beliefs are not competent summary judgment evidence. *de la O v. Housing Authority of City of El Paso*, 417 F.3d 495, 502 (5th Cir. 2005).

  B.  *McDonnell Douglas* Framework

Title VII and the ADEA provide, in relevant part, that an employer may not "fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's" sex or age. 42 U.S.C. § 2000e-2(a)(1) (sex); 29 U.S.C. § 623(a)(1) (age). Title VII was the model for the ADEA, so the same general law applies to claims under either statute. *See EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 & n.6 (5th Cir. 2009).

The *McDonnell Douglas* framework involves three steps. First, a plaintiff must make a prima facie showing of discrimination. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If the plaintiff does so, the burden shifts to his employer to show a legitimate, non-discriminatory reason for any adverse employment action. *Id*. An actionable adverse employment action must be an "ultimate employment decision," which includes termination. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). If the employer successfully demonstrates a legitimate, non-discriminatory reason for such action, the burden shifts back to the plaintiff to provide substantial evidence that the employer's proffered reason was merely a pretext for the discrimination. *Laxton*, 333 F.3d at 578.

3

### C. Title VII and ADEA

Title VII and the ADEA permit plaintiffs to pursue discrimination claims under two distinct theories: disparate impact and disparate treatment. *See Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 176 (2009) (discussing showing required for ADEA claim based on a disparate treatment theory); *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000) (holding that both disparate treatment and disparate impact theories are cognizable in Title VII cases). As relevant here, "[d]isparate-treatment cases present the most easily understood type of discrimination . . . and occur where an employer has treated a particular person less favorably than others because of a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (cleaned up).

To set forth a prima facie case of disparate treatment discrimination, a plaintiff must establish that (1) he is a member of a protected class; (2) he was qualified for the position at issue; (3) he suffered an adverse employment action; and (4) other similarly-situated employees outside the plaintiff's protected class were treated more favorably. *Saketkoo v. Admin. of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022) (citation omitted); *see also Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (sex discrimination); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (age discrimination). To satisfy the fourth prong, a plaintiff must engage in a "comparator analysis" to establish he was treated less favorably than a similarly situated employee outside his protected class under nearly identical circumstances. *See Saketkoo*, 31 F.4th at 998 (citation omitted). "A variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications." *Herster v. Bd. of Super. of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018).

### D. Hostile Work Environment

If a plaintiff alleges that discrimination took the form of harassment which created a hostile work environment, he must show that: (1) he belongs to a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of his employment; and (5) his employer knew or should have known of the harassment and failed to promptly take remedial action. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999). Nevertheless, federal anti-discrimination statutes do not create a "general civility code" in the workplace. *Lauderdale v. Tex. Dept. of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not suffice. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations and internal quotation marks omitted). Rather, to be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* at 787; *see also McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 564 (5th Cir. 1998) ("It is a simple fact that in a workplace, some workers will not get along with one another, and this Court will not elevate a few harsh words or 'cold-shouldering' to the level of an actionable offense.").

### E. Retaliation

To establish a claim for retaliation under both Title VII and the ADEA, a plaintiff must show: (1) that he engaged in an activity protected by the particular statute; (2) an adverse employment action; and (3) a causal link between the two. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478 (5th Cir. 2015). Nevertheless, discriminatory retaliation claims must be

5

administratively exhausted prior to filing suit unless the claim "grows out of an [EEOC] charge that is properly before the court." *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 479 (5th Cir. 1991).

### III. FACTUAL SUPPORT FOR SUMMARY JUDGMENT MOTION

Defendant has submitted authenticated documents in support of her motion which demonstrate the following: On October 21, 2017, Plaintiff began a probationary term of employment as a Rural Carrier Associate (RCA) for the United States Postal Service ("USPS"). Doc. 54-1 (Richard G. Saliba Decl.); Doc. 54-2 at 230 (USPS Notification of Personnel Action). RCAs are tasked with sorting mail, delivering and collecting mail along their assigned route, returning collected mail to the USPS facility, preparing daily trip reports, and the like. Doc. 54-2 at 232. These duties are to be performed according to an "evaluated time" which factors in the needs of the route and a reasonable time for the RCA to complete it. Doc. 54-3 at 47 (Pltf. Dep.); Doc. 54-4 at 5-6 (Theophane Best Decl.); Doc. 54-5 at 2 (Esther Wilson Decl.).

Upon being hired as an RCA, Plaintiff received several days of formal training in the same manner as other new RCAs, as well as specific training with an experienced carrier on several occasions. Doc. 54-2 at 278 (EEOC Summary Decision); Doc. 54-3 at 36-38, 48, 62, 85 (Pltf. Dep.); Doc. 54-5 at 4 (Wilson Decl.). Plaintiff was then assigned to the North Carrier Annex (the "Annex") in Fort Worth, Texas, and given a primary route. Doc. 54-2 at 230 (USPS Notification of Personnel Action); Doc. 54-3 at 39 (Pltf. Dep.).

During Plaintiff's 90-working-day probationary period, he struggled to timely sort and deliver the mail, failing to meet any route's evaluated time. Doc. 54-4 at 5-6 (Best Decl.); Doc. 54-5 at 4 (Wilson Decl.); *see also* Doc. 54-6 at 3-4 (April Shelton Decl.) (averring Plaintiff

6

would spend eight to ten hours just to sort mail, needed help every day, and there was a concern he might not complete his work until midnight). Plaintiff himself acknowledged that he left the Annex to deliver mail later than other carriers and several supervisors complained about his lack of timeliness. Doc. 54-3 at 52-60, 82-85; Doc. 54-3 at 55 (Q: "[D]o you agree that you left the station later after the regulars after casing the mail?" A: "Yes."); Doc. 54-3 at 57 (acknowledging that he was supposed to return to the Annex by 6:00 p.m., but was returning at "around 8:30, 9:00, somewhere around there, p.m."); Doc. 54-3 at 58-59 (acknowledging that as many as three other carriers had to come deliver part of the mail on his route every time during peak season).

As a result of these problems, Plaintiff received additional training and tips to improve his efficiency. Doc. 54-3 at 85 (Pltf. Dep.); Doc. 54-6 at 3 (Shelton Decl.). Nevertheless, other carriers often had to retrieve and deliver some of Plaintiff's mail, working excess hours to do so, because Plaintiff could not complete his work in a timely fashion. Doc. 54-6 at 4 (Shelton Decl.); Doc. 54-7 at 2 (Susan Knudsen Decl.) (averring Plaintiff could not "deliver the route in a timely manner, not according to any standard of the Postal Service for that route" and "never ran a single route from beginning to end by himself," so she had other carriers work on part of his route); *see also* Doc. 54-4 at 6 (Best Decl.) (averring it was not uncommon for Plaintiff to return to the Annex after the outgoing mail truck had left, resulting in mail delays). One employee, who supervised Plaintiff for several weeks in December 2017, avers she compensated for Plaintiff's performance deficiencies by altering his work duties as often as possible, so she did not need to send other carriers to assist him. Doc. 54-7 at 2-3 (Knudsen Decl.) ("I felt that it was a disaster to put Mr. Watson on a rural route, so instead I compensated by putting him on a 'static route' with parcels rather than a rural route. A static route is a route that delivers only a

7

limited number of parcels. I put Mr, Watson on a static route as often as possible because he could not perform his assigned duties on any rural route.").

During Plaintiff's 30-day performance evaluation, he was rated "unsatisfactory" in three categories. Doc. 54-2 at 243 (Emp. Eval.); Doc. 54-3 (Pltf. Dep.); Doc. 54-5 at 5 (Wilson Decl.) (noting unsatisfactory performance in areas of quantity, work quality, and dependability). By the time of his 60-day review in January 2018, Plaintiff's performance had not improved, and he received a score of unsatisfactory in the same categories. Doc. 54-2 at 244 (Emp. Eval.); Doc. 54-5 at 5 (Wilson Decl.) (App'x 52, 255-57, 385). During this evaluation, Plaintiff attempted to justify his unsatisfactory performance, stating that he had not been properly trained. Doc. 54-2 at 244 (Emp. Eval.). Nevertheless, USPS supervisor Esther Wilson prepared a report recommending that Plaintiff be separated from service, noting he exceeded his hours, failed to timely deliver express mail, and was unable to complete his route within the evaluated time. Doc. 54-5 at 6 (Wilson Decl.); *see also* Doc. 54-2 at 97 (Wilson Affid.) (noting that Plaintiff brought mail back undelivered on more than one occasion).

The USPS human resources manager concurred with Wilson's recommendation and Plaintiff was notified of his termination on January 18, 2018, which was confirmed in writing shortly thereafter.[3] Doc. 54-2 at 256 (Wilson Letter); Doc. 54-3 at 73 (Pltf. Dep.). Plaintiff filed a charge of discrimination with the USPS the same day, alleging discriminatory harassment and termination based on his race, sex, and age, and filed a formal EEO complaint thereafter. Doc. 54-2 at 1-2; Doc. 54-2 at 6-7. Following an investigation, an EEOC administrative judge granted

---

[3] While Plaintiff also argues at length about events which took place in 2021 surrounding his allegedly continued employment with USPS, those allegations are not pertinent to the instant dispute which involves events that occurred between November 2017 and January 2018.

8

summary judgment in favor of the USPS, which then issued a final decision denying Plaintiff's claims. Doc. 54-2 at 277-78, 281-82.

In support of his own summary judgment motion, Plaintiff submitted controverting evidence in the form of unsigned declarations and unauthenticated evidence such as USPS business records, text messages, emails, letters, timecards, photographs. *See* Doc. 65. Defendant objects to the documents, asserting they do not constitute competent summary judgment evidence. Doc. 67 at 3 n.4. The Court concurs. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence."). Thus, the Court does not consider that evidence in addressing the parties' cross-motions.

## IV.  ANALYSIS

### A. *Discrimination*

Defendant alleges Plaintiff cannot establish a prima facie case of discrimination based on either his sex or age because (1) he was not qualified for his position as evidenced by his performance issues; (2) he cannot establish that his proposed comparators, Robin Mott and Proserpine Chirashagasha, were either similarly situated to him or that they received more favorable treatment then he did; and (3) he cannot establish that he was otherwise discharged because of his age for purposes of the ADEA. Doc. 53 at 20-26 & n.16.

Liberally construing his response, Plaintiff contends that any performance problems he exhibited stemmed from Defendant's failure to properly train him for peak season on a busy route and refusal to transfer him to another route as he requested. Doc. 65 at 9-16, 22. Additionally, Plaintiff maintains he was not employed as an RCA for the entirety of his employment because he worked as a parcel runner in December 2017, such that his performance

9

in that role should have been evaluated as well. Doc. 65 at 10, 12-14, 19.

Critically, Plaintiff's arguments undercut any possibility that he was qualified for the RCA position. During his deposition, he acknowledged his performance deficiencies, though he blamed them on his lack of training. But the evidence of record reflects Plaintiff received the same training as other RCAs, if not more, and his speculative assertions to the contrary are both inapposite and insufficient to avoid summary judgment on his discrimination claims. *de la O*, 417 F.3d at 502. Plaintiff's December 2017 change of duties to running parcels did not alter his status as an RCA. The accommodation was made to avoid further problems caused by Plaintiff's inability to timely complete his route.

Further, Plaintiff's proposed comparators for his sex discrimination claims, Mott and Chirashagasha, are not similarly situated to him. According to USPS's then-human resources manager, there were no disciplinary actions on file related to Mott's performance, and Mott even assisted Plaintiff on his route once. Doc. 54-8 at 13 (Donna Dunker Decl.); *see also* Doc. 54-5 (Wilson Decl.) ("[Mott] was more proficient in carrying a route than [Plaintiff]."). Moreover, Mott was not a probationary employee when Plaintiff began working at the Annex and was, thus, presumably not under an equivalent level of scrutiny. Doc. 54-2 at 133 (Best EEO Investigative Affidavit).

Chirashagasha, who is also Plaintiff's proposed comparator for his ADEA claims, likewise had no disciplinary actions on file with respect to her performance, and there is no evidence she required assistance from other carriers on her route. Doc. 54-8 at 14 (Dunker Decl.); Doc. 54-5 (Wilson Decl.) ("Ms. Chirashagasha . . . did not have the same performance deficiencies as [Plaintiff], and she showed improvement as she learned the skills needed to carry

10

the routes to which she was assigned."). To the extent Plaintiff argues Chirashagasha was assigned a lighter route due to her sex, his contention is unavailing because one USPS "central scheduler" assigns RCAs to particular facilities and routes based on the needs of the organization and the applicable collective bargaining agreement. Doc. 54-8 at 7 (Dunker Decl.). Because Plaintiff has not made the requisite prima facie showing, his Title VII and ADEA discrimination claims fail. *Saketkoo*, 31 F.4th at 998.

### B. Hostile Work Environment

Plaintiff's hostile work environment claim fares no better. While Plaintiff did not enumerate any instances of hostility in the operative complaint, during the EEO proceedings and his deposition, he described several "derogatory" remarks one USPS supervisor directed at him. Doc. 54-3 at 12; Doc. 54-2 at 39. The statements, however, pertained to Plaintiff's job performance and did not allude to his age or sex. *See, e.g.*, Doc. 54-2 at 39 ("I can't do you. You suppose [sic] to been back by 6:00 p.m."; "What are you doing? This is just a mess!"; "Look at him, who is training him"; "Damn, what is the problem?). The only potential comment relevant to Plaintiff's sex is that "he should be wearing Cowgirls Pink." Doc. 54-2 at 39. But teasing and offhand comments cannot establish an actionable hostile work environment claim. *Faragher*, 524 U.S. at 788. Defendant is thus entitled to summary judgment on this claim.

### C. Retaliation

Plaintiff alleges in his complaint that Defendant retaliated against him when he complained about being harassed. Doc. 34 at 13. As Defendant correctly asserts, however, Plaintiff did not exhaust that claim as he was statutorily obligated to do. Plaintiff alleged in his EEO complaint and supporting declaration only discrimination and harassment based on his race,

11

sex, and age. Doc. 54-2 at 1-2 (EEO Complaint); *see also* Doc. 54-2 at 6-8 (EEO Dispute Resolution Specialist's Inquiry Report) (same); Doc. 54-2 at 9-12 (USPS Information for Pre-Complaint Counseling) (same). While Plaintiff asserts that the EEOC "closed" his retaliation claim in April 2022, Doc. 65 at 22, there is no record support for this proposition. Because Plaintiff did not exhaust his retaliation claim and it did not "grow out of" a previously filed EEO charge, it must be dismissed. *See Barrow*, 932 F.2d at 479.

### D. Intentional Infliction of Emotional Distress

Although Defendant does not address Plaintiff's tort claim, the Court nevertheless determines that it fails as a matter of law because the availability of Title VII and ADEA remedies forecloses that cause of action. *See Stelly v. Duriso*, 982 F.3d 403, 409 (5th Cir. 2020) (upholding dismissal of intentional infliction claim which was based on the same facts that supported, *inter alia*, the plaintiff's Title VII claim).

## V.  CONCLUSION

For the foregoing reasons, Defendant's *Motion for Summary Judgment*, Doc. 52, should be **GRANTED**, Plaintiff's cross-motion, Doc. 55, should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on January 9, 2023.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).